Good afternoon, your honors. My name is John Meyer. I'm here on behalf of the Pellin Skeleton Wildlife Association and Yellowstone Buffalo Foundation. Before I begin, can I reserve four minutes for rebuttal, please? Your honor, I just heard your advice and I was wondering if you have any questions right out of the gate. Sure, I think one area to start with in this case is the jurisdiction. I know the government has argued quite a bit that there is no jurisdiction in this case, and so why don't you start by explaining, and the whole panel can jump in here, why we have jurisdiction and on the denial of the, or whatever the district court did with the preliminary injunction, explain to me why you think we can review that decision. Your honor, can I start by... I'd like to just clarify an even more preliminary question, and I what exactly are you appealing in this appeal? In this case, the district court denied permanent injunctive relief on April 16th. You're appealing the denial of permanent injunctive relief? As well as the summary judgment ruling in a case called Anderson v. Allstate said, quote, subsequent events can validate a prematurely filed appeal. So even if the government argues that the appeal was filed prematurely, the Ninth Circuit has said that subsequent events can make that, can give the Ninth Circuit jurisdiction. So what would the subsequent event be that would give us jurisdiction? Over first, Judge the motion for summary judgment, then the motion for a permanent injunction. Yes. So why do we have jurisdiction over the summary judgment? In this case, the district court denied the claim of the NIFMA and NEPA claim. So we have appealed that, and on its, in its April 16th order, the district court explicitly stated that we had prevailed on the merits of our case, and it denied our one claim. So there's nothing left to do in terms of the merits of the case. So that's why this court has jurisdiction over the merits of the appeal. In terms of the injunction, the district court on April 16th said that it was treating our motion as a injunction pending appeal as a reconsideration of permanent relief, permanent injunctive relief. The Ninth Circuit has said that it takes a pragmatic approach to finality. That's Evan v. Law Offices 688 F3D 1015. In that case also says that events subsequent to an order that's arguably premature can then give the Ninth Circuit jurisdiction. So, but what, what happened? What's subsequent that happened that gives us jurisdiction? In this case, the district court issued an order, a final order, on April 16th denying our reconsideration for permanent injunctive relief. On page 24 of the Forest Service brief, it explicitly states that when a district court denies injunctive relief, explicitly denies injunctive relief, that the Ninth Circuit has jurisdiction. But I think that begs the question, I think what we're all trying to figure out here is that the April 16th order, which we're aware of, I thought that was a motion for an injunction pending appeal. Is that right? So we were asking for a permanent injunction pending appeal. Right. And that's what the court treated that motion as, a reconsideration of, for a permanent injunction. And the court explicitly states in its April 16th order, I treat this motion as a motion for reconsideration of my denial for permanent injunctive relief. And so your argument then is that the actions taken by the district court after notice of appeal was filed, in a sense, retroactively grants us jurisdiction to review this case. Yes, Your Honor. And there are Ninth Circuit cases that say that is acceptable. And you say that was Anderson v. Allstate? No. The case is called Evon, E-V-O-N v. Law Offices of Sidney and Green. The page size is 1020, Ninth Circuit 2012. And then there's another case that says subsequent events can validate a prematurely filed appeal. So in this case, if we're looking for a final order that's appealable, the district court issued a final order on April 16th. They said, I'm not going to grant you permanent injunctive relief. I'm explicitly denying you permanent injunctive relief. And you've prevailed on your claims and you've already appealed the one claim that you lost. So there's nothing left for me to do. Now, absent that order, would you, would there be jurisdiction? I'm taking the answers. I mean, from the way you're relying on it now, I'm taking the answer would be we don't have jurisdiction. My, I want to say that we don't have to decide that because there is a subsequent order. I do think that, I think that we would obviously argue that the court would have jurisdiction even without that final order because the district court said, I'm not going to give you injunctive relief. I'm going to defer injunctive relief. And in this case, that deferral is practically speaking a denial because we have members who are seeking to use this area who are suffering irreparable harm. And so that denial is a deferral is essentially denial. Well, but the case law says that even if it has the practical effect of a denial under Carson, you have to go to whether or not the order has serious, perhaps irreparable consequences. And what would those be in this case? So in this case, we have members who are, we have one member who sought to use the area and couldn't and submitted a declaration. And he said, this is harming my interest in my aesthetic interest, my recreational interest, my interest in wildlife. And then we have that member died. We have another member who said, this is probably my last season I'm ever going to be able to go to this area. And so that I would argue is pretty serious, irreparable harm. And you also need to show that without our hearing it now, you'll never have a remedy for the denial of that injunction. Yes, Your Honor. So in this case, the Joe Kowalski declaration says, I think this is my last season that I'm going to be able to use this area. And so this is his last chance. Can I ask you something else, procedurally, on this case? What's the status of the claim that was remanded to the Forest Service for further consideration back in 2016? The District Court ordered the Forest Service to prepare supplemental NEPA analysis. And the Forest Service has still not prepared that analysis. That's why we asked for a permanent injunction pending appeal. The District Court explicitly denied that permanent injunction and said you've already prevailed on the merits of that claim. So that claim is done. The claim where they remanded, is that the claim you're referring to? Your Honor, so the District Court ordered the Forest Service to prepare new analysis. Correct. He didn't say him at all. He required them to prepare new analysis. And so that, I think, is a little bit different than a remand. Ordering the Forest Service, maybe I'm splitting hairs here. Well, it makes a difference because if it's a remand and, you know, there's expectation that they'll come back to court and this can be, the injunction can then be resolved. The claim is still open. The litigation is still ongoing. Yes, Your Honor. So in District Court, we asked for a reconsideration of the permanent injunction. The District Court judge said, okay, I ordered you, Forest Service, to prepare new analysis by October 2017. Here we are, February 2018, March 2018. You haven't done it and you've told the public that you're not going to have it complete until October 2018. So you're a year late. And at that point, the court said, I'm going to explicitly deny your permanent injunctive relief. So that was after the District Court deferred? Yes, Your Honor. If you have no other questions, I'm going to move to the merits. Certainly. Okay. So in this case, the environmental impact statement says that the Forest Service used fine filter analysis for species in which the public had viability concerns. So Gallatin Wildlife Association submitted comments during the NEPA process to the Forest Service saying, we have concerns about the viability of bighorn sheep. And that is on, the only site that I put in our brief is ER 61, but we also submitted other sites that are at Supplemental Excerpts of Record Volume 3, pages 1 and 3. So all throughout the NEPA process, Gallatin Wildlife Association submitted comments regarding viability of bighorn sheep. The Forest Service told the public in its environmental impact statement, we used fine filter analysis when there were viability concerns. So Gallatin Wildlife Association expressed viability concerns. The Forest Service did not use a fine filter analysis. That's a pretty clean violation of NEPA, Your Honor. So I'm guessing that the defendants are going to say, even if these guys didn't use the analysis, it's harmless error because they did this other analysis and the defendants tried to argue harmless error in the district court as well on another claim that they lost. The district court rejected that harmless error argument. And in this case, the Ninth Circuit should reject the same harmless error argument for three reasons. Well, first, the district court has already rejected it. When you're denying the public the opportunity to participate under NEPA, it's not harmless error. The second reason is, you're basically, you're making a sham of whole NEPA process. You can't tell the public you did something and then not do it. NEPA is a procedural statute. When you tell the public that you've done something, you should have done it. And the third reason is that there was a dead bighorn sheep found, and that dead bighorn sheep was never discussed in the coarse filter analysis. I actually have a question about the jurisdiction issue. I had a chance to look at the case that you cited, Evan versus Law Offices of Mikkel. And in that case, it appears that what happened was is that the Mikkel was arguing there was no jurisdiction because there was a partial summary judgment. But the party in that case, Evan, actually was appealing the final judgment in that case. Here, when the notice of appeal was filed, you were appealing a partial summary judgment, correct? Yeah, sure. So it seems to me, I'm not sure Evan is exactly like this case, because the time Evan, the notice of appeal, there wasn't this, I guess what I'm concerned about, and maybe there's a case that makes my concern go away, but when the notice of appeal was filed, there was a certain situation there. And then after the notice of appeal was filed, the district court did certain things. Do you know of any case that actually is like ours, where after the district court, after the notice of appeal was filed, the district court took certain actions that actually changed the nature of this appeal? I don't know a case that's like apples to apples, Your Honor. But the U.S. Supreme Court has said that courts should take a practical rather than a technical construction of finality. In this case, the district court has already said, I ruled on, in your favor, on two claims. I've denied one of your claims, and I'm explicitly denying injunctive relief. So if we take a very technical construction of that finality language, ultimately what's going to happen is that we're going to remand the case back, and we're going to, the judge is going to say what? He might say, we don't know, because he's going to say, I've already ruled on this. And so we're going to have to come back up here. And in the meantime, we have a member who's afraid he's never going to get to see this place. And so that goes to the considerations that the court takes when determining whether or not it has jurisdiction over an appeal. And can you, real quickly, I know you want to save some time for rebuttal, but can you point to us in the April 16th, or the April order, I'll call it, what language you're relying upon? There's a header that says, I believe it's on page five, it says the court is treating this as a motion for reconsideration of permanent injunctive relief. And so the Ninth Circuit has on page 24, the Ninth Circuit said, page 24 of the government brief, that anytime you have an order that specifically denies injunctive relief, the Ninth Circuit has jurisdiction. So in this case, the district court explicitly denied injunctive relief. The Ninth Circuit has jurisdiction over this appeal. Why is this relief not a preliminary injunction versus a permanent injunction? I screwed up and I should have asked for a reconsideration. I didn't realize that that was how it should have been characterized. As a permanent injunction. Yes, Your Honor. Judge Wardlow, do you have any questions or do we want to hear from the other side now? I'll wait. I'll wait to hear from the other side. All right. Well, you've got four minutes. If you want to reserve for a rebuttal, you have four minutes. Okay. Thank you. May it please the court, Avi Kupfer for the federal appellees. With me at counsel's table is Dana Hupp, who represents several of the intervenors and will be taking four minutes to argue. This court lacks subject matter jurisdiction because of the settled rule that a summary judgment order that decides liability but leaves the issue of relief open for further proceedings is not final under 28 U.S.C. 1291. In this case, the court issued partial summary judgment to the Forest Service on one issue, issued a remand on two specific issues to Judge Wardlow's question. On one of those issues, the additional analysis on the allotment management plans, the Forest Service completed its review late last year on December 27th. On the other issue that was remanded, the supplemental EIS regarding the memoranda of understanding, the Forest Service issued a final supplemental EIS earlier this year in a draft record of decision. It's in the middle of the objection resolution process on that mandated review. Appellants have actually participated, submitted comments and objections, and in fact, there is an objection resolution meeting scheduled for next week in which appellants have been invited to participate. And in a case like this, the cases of this court and the Supreme Court are clear that because the question of relief has remained unresolved, jurisdiction doesn't lie under 1291. Okay, so what happens next? With respect to the issues that were on remand, what happens next? Once the agency finally resolves them, does it return then to the district court for him to decide whether or not that was satisfactory? That's right, Your Honor. The district court has ordered the parties to submit status reports at various times, and when that review is complete, the Forest Service plans to notify the district court that that review is completed. At that point, presumably, the Forest Service would then take up the issue of the request for permanent injunctive relief, and it would certainly be within the district court's prerogative to reconsider any of its pronouncements on the merits as well. Okay, so that covers it with respect to Section 1291, but why doesn't 1292A1 give us jurisdiction over the, I guess, permanent injunction, denial of the permanent injunction? We'd argue that 1292A1, which as this court has recognized, is a very narrow exception to the general final judgment rule, doesn't apply here, because it only applies in two circumstances. One, an order specifically denies a request for injunctive relief, which didn't happen here. Or, as you mentioned, Judge Owens, when all three of those requirements under Carson-Brands are met. And we would argue that this Court can stop at the first of those, whether an order has the practical effect of denying permanent injunctive relief, because the possibility of granting permanent injunctive relief remains unimpaired. In fact, in one of the cases cited in our brief, Sierra Club v. Department of Transportation, this Court explicitly stated that a deferral of a request for a permanent injunction does not constitute a denial for purposes of the Carson test. Not that, we're not implying that there's some sort of magic words requirement, but the district court did explicitly state that it wasn't going to weigh in on that request and would defer a decision until the Forest Service completes the mandated review on administrative remand. So is it your position, then, that the April 2016 order was a denial of the preliminary injunction versus the permanent injunction? That's correct, Your Honor. The district court labels its order a denial of interlocutory injunctive relief. It applies the test, the winter test, applied in interlocutory circumstances. And, in fact, on page 10 of that order, it explicitly states that it is not going to reconsider the request for permanent injunctive relief because it's on appeal to this Court. Now, I'd briefly like to note that the district court in that order, in the April order of this year, did characterize the order on appeal, this partial summary judgment order, as having denied a request for permanent injunctive relief. That issue wasn't briefed because the briefing in this case had already been submitted at this point, and we're happy to submit a supplemental briefing if the Court would like. But it's our position that, well, first, the settled rule, as the Supreme Court has stated, that a district court's label for its own action doesn't control the question of appealability. And we'd argue that that principle should be given particular weight in this circumstance, where that label came in a post-hoc characterization two years after the order being appealed. And the order being appealed fairly plainly states that the district court is deferring a decision on the request for permanent ---- Well, counsel, I just want to suggest that the Court's 2016 order is not really entirely clear. For example, at page 35, it says, it's, yeah, PR 35, Gallatin is sought to enjoin domestic sheep grazing on Forest Service allotments. The Court, considering injunctive relief, must balance the hardships between the plaintiff and defendant and consider the public's interests. This test applies when a plaintiff seeks a permanent injunction to remedy a NEPA violation. So I agree with you that at some points he says it's appropriate to defer, but at other points he characterizes it as a permanent injunction, permanent injunctive relief, and says he declines to enjoin that. So I don't think it's a model of clarity. I guess I'm asking for help for what's the best reading of this order. And then given that it's subject to maybe some ambiguity, why wouldn't we use how he characterized what he did in 2018 to shed some light on that? Your Honor, we don't believe that the 2016 order being appealed is ambiguous. The statement that you quoted declines to enjoin further domestic sheep grazing. There are three more words in that sentence, at this juncture. No, no, no, no. I quoted from page 35. You haven't addressed that. We think the clearest statement of the district court's intent on the injunction request is at the bottom of page 36 of that order, where the Court says that it deems it appropriate at this stage to defer a decision on whether to enjoin domestic sheep grazing until the Forest Service has resolved the deficiencies in its analysis. That seems fairly clear to the agency, that the district court was going to take up the permanent injunction request after the mandated analysis on remand. But even if the district court said that, even if it were clear that it was a denial rather than a deferral, this Court has also set a general rule that an administrative remand is generally only final for purposes of 1291 with respect to an agency appeal, because it's an agency whose — for whom review would be foreclosed as a practical matter. And the district court — and that under 1291, an administrative remand doesn't create finality with respect to other parties. But we think the easiest — Counsel, there's two questions. One is whether it was a denial or a deferral. The other question is, what was he denying or deferring? Was it a request for permanent injunctive relief or preliminary injunctive relief? The district court was deferring a decision on the request for permanent injunctive relief. It has three — the district court has three times denied requests for interlocutory injunctive relief, and the appellants have ultimately decided not to pursue appeals of those denials in this Court. On one of those, they did file an appeal and voluntarily dismissed. So there are pathways. There are other routes for seeking review before this Court. Appellant simply hasn't sought those. It could also seek a 54B certificate. I think that there are some other hurdles to one being granted in this case, but I think the point remains that because there hasn't been a final — there has not been a final decision entered because the court — the district court has not resolved the request for permanent injunctive relief. And so there is no 54 — Rule 54B certification? There's not. Unless the panel has specific questions about the one issue on the marriage that has been appealed, those arguments are in the Forest Service brief. So seeing none, we ask that the — that this panel dismiss this claim for — dismiss this appeal for lack of subject matter jurisdiction and, in the alternative, affirm the judgment of the district court. Thank you. He gave you some bonus time. Good afternoon. May it please the Court. My name is Dana Hupp, and I represent the Appellee Intervenors, Hully Livestock, and Arubish and Conan Livestock. My argument today will be limited to the appellant's request for permanent injunctive relief. As discussed by counsel for the Forest Service, the district court's decision to defer consideration of permanent injunctive relief was not a final appealable decision. In the event this panel decides to address the question of permanent injunctive relief on its merits, there is no evidence in the record which supports the conclusion the district court abused its discretion. Injunctive relief is an extraordinary remedy, and when imposed, it must be carefully tailored. As Justice Ginsburg wrote in Winter, flexibility is the hallmark of equity jurisdiction. Like the Forest Service when implementing its multiple-use mandate, courts, when determining if permanent injunctive relief is appropriate, have the task of balancing the interests and the harms to the parties. In this case, the record clearly demonstrates that it would be the permittees that would be irreparably harmed by permanent injunctive relief. As demonstrated by the permittees' declarations, the grazing allotments are essential to their way of life, the quality of the wool produced, and the economic viability of their ranching operations. There are several salient facts to this case that the court should consider when analyzing the balance of the harms to the parties and the public's interest. These facts also demonstrate why it's important that district courts are entitled to compensation and in fashioning equitable relief. These facts are as follows. First, grazing has been occurring on these allotments for over a century. The permittees' families have been grazing on them for four generations. Therefore, issuance of an injunction in this case would be altering the status quo. Second, the 2018 grazing season has already begun. The permittees trailed on to the allotments in early July. Over the course of the next three months, the permittees will be rotating sheep on the allotments. Third, only approximately 55,000 out of 3.3 million acres within the Forest Service boundary are utilized during the three-month grazing period. And significantly, the appellants are not precluded from using the allotments during this grazing time. Fourth, the district court ruled this spring in response to the appellant's motion for an injunction pending Peel that they did not meet their burden of proving irreparable harm or the other winter factors. There is no evidence in this case that bighorn sheep have been removed or have died as a result of coming into contact. Nor is there any evidence in this case of any commingling. Fifth and finally, the Forest Service's supplemental analysis on remand will be completed this fall. Appellants have participated in that administrative review process and will have the opportunity to challenge that review process before the court, both the district court and the Ninth Circuit. In summary, Gallatin, the appellants, have identified no likelihood of irreparable harm associated with grazing of domestic sheep on the allotments. What about the lack of use argument that they present, that there is a lack of use by some of their senior members? Your Honor, the argument they present is that they won't be able to, that their allotments are not being used. They are allowed to access the allotments during the grazing period. The allegations they have made is that they don't like to look at domestic sheep or that they are scared of the dogs that are protecting the sheep. Our argument would be in balancing the harms, that the harm to the permittee of a permanent injunction outweighs the harms, the recreational interests that the appellants have articulated. In conclusion, should the court find that the district court effectively denied the appellant's request for injunctive relief, the permittees respectfully request that this court remand the issue of the injunction to the district court so that it can be given the opportunity to address this question in the first instance. Unless there are any questions, I am finished. Thank you, counsel. Thank you. You have four minutes. The district court said the balance of harms in public interest were too close to the harms to the defendant. And in this case, because there has been no harm to the plaintiffs, according to the district court, that harm was never placed in the scale. So once we find that there has been harm, we then say, well, we have to reweigh it now because it was already too close, now it weighs in favor of plaintiffs. The second reason why the balance of harms, does that make sense, Your Honor? The District Court, as the Supreme Court of the Association submitted, filed several declarations from a bighorn sheep expert named Jim Bailey. The district court said that he can file his declarations to establish irreparable harm to support standing, but the district court never, yeah, that doesn't make sense, because you don't have to show irreparable harm to have standing. So the district court's legal analysis was air. In this case, once the Ninth Circuit looks at the Jim Bailey declarations that talk about irreparable harm, that talk about viability, it's clear that bighorn sheep are suffering irreparable harm because of the domestic sheep. Dr. David Mattson, who used to work for the USGS for 30-plus years as a federal grizzly bear biologist, submitted declarations to the district court. Those were never talked about. The only, well, that's not true. The district court talked about them, but he said in the context of grazing, the plaintiffs haven't shown irreparable harm. Basically, they've been here 100 years, so you can't show irreparable harm. And that is confusing irreparable harm to the species with the balance of harms. Just because they've been there 100 years doesn't mean they haven't suffered irreparable harm. That's like saying before the 19th Amendment that women could never suffer irreparable harm before they were allowed to vote because they never were allowed to vote before, so you've never suffered any irreparable harm. And that's not right. That analysis is not right. Every time a plaintiff's member wants to use this area and cannot, they've suffered irreparable harm. Now, whether that outweighs the harms to the defendants is another factor that needs to be considered. And in this case, the district court, again, already said that the balance of harms is too close to resolve. So once you start analyzing irreparable harm to bighorn sheep, to grizzly bears, to plaintiffs' members, then the balance of harms favors the plaintiffs. One technical question. On page 4 of the 2018 order, the district court says the court denied plaintiff's request for injunction Roman numeral 4, and it says docket 148 at 36. What is that? What is injunction Roman numeral 4? I believe that was the last permanent injunction request as part of our summary judgment motion. I should know, but I'm not 100% sure on that, Your Honor. I apologize. It looks like on the order at the top of page, the bottom of page 3 and top of page 4, it talks about plaintiffs sought the alternative permanent injunctive relief injunction 4 for domestic sheep grazing and trailing in the BDNF. Yes, Your Honor. Yes. So is that, did you appeal from that? Is that what this appeal is? Yes, Your Honor. Yes. So real quickly, in 1900, there were over 100,000 bighorn sheep in Montana. Today there are fewer than 6,000. There is a mountain in the Graveline Mountains called Bighorn Mountain. The reason we don't have bighorn sheep on Bighorn Mountain is because of the domestic sheep. Montana Fish, Wildlife, and Parks has said that it would restore bighorn sheep onto Bighorn Mountain into the Graveline Mountains if the domestic sheep were not there. All right. Thank you very much, counsel. Thank you, Your Honor. Thank you all, counsel, for your argument in this case. This matter is submitted. And, Mr. Meyer, I think you're going to catch that plane. All right. Very well.
judges: Wardlaw, Owens, Marquez